**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Glenn, Jr., | No. CV-16-04268-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff George Glenn seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied his disability insurance benefits under §§ 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on reversible legal error, the Commissioner's decision will be affirmed.

**I.  Background.**

Plaintiff is a 59 year-old male who previously worked as a warehouse supervisor. A.R. 143, 167. On April 23, 2013, Plaintiff applied for disability insurance benefits, alleging disability beginning May 12, 2012. A.R. 143-44. On April 15, 2015, he appeared with his attorney and testified at a hearing before the ALJ. A.R. 31-55. A vocational expert also testified. A.R. 49-55. On June 11, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 15-25. This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. A.R. 1.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not currently working, (2) he has a severe

impairment, and (3) this impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work. If the claimant meets his burden through step three, the Commissioner must find him disabled. If the inquiry proceeds to step four and the claimant shows that he is incapable of performing past relevant work, the Commissioner must show in the fifth step that the claimant nonetheless is capable of other work suitable for his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and that he has not engaged in substantial gainful activity since May 12, 2012. A.R. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease with radiculopathy status post surgery, degenerative disc disease of the thoracic spine, status post cervical discectomy, knee osteoarthritis, diabetes, and obesity. A.R. 17. Although the ALJ acknowledged that the record contains evidence of hypertension and gastritis, she found that these conditions are not severe impairments. A.R. 18. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 18. At step four, the ALJ found that Plaintiff has the RFC to perform light work, except that Plaintiff cannot operate foot controls with his left foot. A.R. 18. The ALJ then concluded that, considering Plaintiff's age, education, work experience, and RFC, he is able to perform past relevant work as a warehouse supervisor. A.R. 24-25.

**IV. Analysis.**

Plaintiff argues that the ALJ's decision is based on legal error. Doc. 10 at 1. Specifically, Plaintiff argues that the ALJ (1) improperly discredited his symptom testimony, (2) based her opinion on an incomplete and inaccurate review of the evidence, and (3) improperly discredited the medical opinions of two treating physicians. *Id.* For reasons stated below, the Court finds no reversible error.

### A. Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).[1]

The ALJ summarized Plaintiff's symptom testimony in her opinion:

> At his hearing, the claimant testified that he is unable to walk or sit for extended periods due to bilateral knee pain, which is worse on the left, and back pain. The claimant stated that he only drives short distances. Moreover, the claimant testified that he has to lie down 2 to 3 times a day to stretch. He stated that he uses a recliner 2 to 3 times a day to raise his feet up for 15 to 20 minutes at a time. The claimant also reported he can lift 25 to 30 pounds but can only carry up to 15 pounds. Additionally, the claimant said that he cannot tie his shoes on his own and that his wife needs to put on his socks and shoes. In a function report, the claimant stated that he can only walk 100 yards at a time before he needs to rest.

A.R. 19 (internal citation omitted).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. A.R. 19. Because the ALJ made no finding of malingering, she could discredit the symptom testimony only with clear and convincing reasons. *Garrison*, 759 F.3d at 1015.

---

[1] Defendant opposes the clear and convincing standard of review (Doc. 11 at 13 n.3), but the Ninth Circuit has held that defendant's position "lacks any support in precedent and must be rejected," *Garrison*, 759 F.3d at 1015 n.18.

Plaintiff relies on *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), to challenge this credibility determination. In *Brown-Hunter*, the Ninth Circuit held that an ALJ commits legal error by making a general credibility finding supported only by a recitation of medical evidence. *Id.* at 489, 494. But that aspect of the Ninth Circuit's holding is distinguishable. Although the ALJ's opinion could have been organized more clearly to highlight its specific reasons, they are identified in the decision: (1) Plaintiff's relatively normal examination results, (2) Plaintiff's non-compliance with medical advice to lose weight and stop smoking, and (3) Plaintiff's daily activities. A.R. 19-22. The Court will address each of these reasons.

### 1. Relatively Normal Examination Results.

The Ninth Circuit has made clear that if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Garrison*, 759 F.3d at 1014 (a claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof") (quoting *Smolen*, 80 F.3d at 1282). But an ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as she "make[s] specific findings justifying [her] decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

As noted above, Plaintiff testified that his disability is related to bilateral knee pain and back pain. A.R. 19. The ALJ noted, however, that many of his physical examinations, as reflected in the medical records, showed little or no evidence of significant knee or back pain. A.R. 20-22.

With respect to knee pain, the ALJ noted that Plaintiff was repeatedly able to squat without difficulty during physical examinations, despite the fact that Plaintiff is obese.[2] These findings were made in examinations in October 2012, November 2012, January 2013, May 2013, July 2013, October 2013, and February 2014. A.R. 21-22. In March 2013 and November 2014, Plaintiff had full range of motion in both knees without warmth, erythema, or effusion present. A.R. 21-22. The ALJ noted that Plaintiff showed persistent effusion and crepitation throughout the arc of motion in both knees in May 2015, but this was a different result from other exams. A.R. 22. The ALJ further noted that Plaintiff had normal motor function and a steady gait in August 2012, January 2013, May 2013, July 2013, and October 2013. A.R. 21-22. The October 2012 examinations reflected that Plaintiff had a "minimally" antalgic gait with left leg avoidance, but this finding was outweighed by the many instances noted by the ALJ where Plaintiff's gait and walking movements were normal. A.R. 21.

With respect to back pain, the ALJ noted that in May 2012 – about the time of onset for Plaintiff's alleged disability – an examination of Plaintiff showed normal alignment and mobility of his neck and head, no spinal tenderness, normal alignment and mobility of the spine, and a normal range of motion and strength in all extremities. A.R. 20. In June 2012, no pain was elicited upon palpitation of the spine posteriorly. *Id*. In August 2012, although extension of the lumbar spine was limited, Plaintiff had good range of bending motion. A.R. 21. Plaintiff underwent a denervation of lumbar facet joint nerves in late 2012, and showed some tenderness in October of that year. *Id*. Nevertheless, toe and heel walking as well as a squat were performed without difficulty, and Plaintiff had no significant limitation of lumbar spine range of motion. *Id*. Plaintiff underwent a lumbar laminectomy at L4-5 in November 2012, and two weeks later appeared in fair condition. *Id.* He had a mildly antalgic gait with limitation on truncal motion and diminished sensation in his left leg, but he had good posture and equal

---

[2] The ALJ noted that Plaintiff is obese with a body mass index ranging from 46 to 54, indicating class III obesity. A.R 22.

weight-bearing and was able to perform toe and heel walking and a squat without difficulty. *Id.* In July 2013, Plaintiff was able to get up quickly from a seated position, had a normal-paced and normal-appearing gait, and was able to hop normally. *Id.* He was also able to bend forward at the waist and could nearly touch his toes without pain. *Id.* In October 2013, Plaintiff's lumbar range of motion was restricted "voluntarily" and he had tenderness of the lumbar spine and decreased sensation in his left foot. *Id.* But he had a non-antalgic gait, toe and heel walking that were normal, and he performed a squat without difficulty. A.R. 21-22. In February 2014, Plaintiff had an antalgic gait and voluntarily reduced range of lumbar spine motion, but had normal muscle strength and could perform a squat and rise without difficulty. A.R. 22. In September 2014, Plaintiff had low back tenderness, but full range of extremity motion. *Id.*

In summarizing her findings, the ALJ noted that in most of these examinations Plaintiff had a non-antalgic to "mildly" antalgic gait, maintained normal strength and extremity motion, had no effusion in his knees, had good bilateral knee motion, was able consistently to perform a squat and toe-heel walk, and required no assistive device such as a cane or wheelchair. *Id.*

The Court views these findings as specific. The ALJ cited precise medical examinations and the result of those examinations. Although the results clearly reflect that Plaintiff has had some difficulty with his knees and back, the medical examinations cited by the ALJ largely demonstrate that Plaintiff is able to function. *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court finds this recitation of the evidenced by the ALJ to be a clear and convincing basis for concluding that Plaintiff's testimony regarding the severity of his symptoms was not fully credible.

### 2. Non-Compliance with Medical Advice.

Social Security Ruling 96-7p counsels that a claimant's symptom testimony may be less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p (July 2, 1996) (subsequently superseded, but still in effect at the time of the ALJ decision). The ALJ reasoned that "the claimant did not follow his doctor's advice to stop smoking or lose weight, which is not entirely consistent with his allegation of disability." A.R. 22. This suggests that Plaintiff chose not to lose weight or stop smoking, but the hearing testimony reflects that Plaintiff made failed attempts to lose weight (A.R. 37) and reduced his smoking by approximately 50 percent (A.R. 38-39). Plaintiff attributed his failure to lose weight to his general lack of mobility caused by his severe impairments. A.R. 37. Absent more specific and clear reasoning, this is not a convincing reason to discredit Plaintiff's symptom testimony.

### 3. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ declared that Plaintiff's daily activities support the RFC. A.R. 22. Specifically, the ALJ emphasized that Plaintiff (1) does not require assistance with

bathing, grooming, dressing, or feeding; (2) walks and swims for exercise three times per week; (3) babysits his 4-year-old granddaughter for three to four hours almost every day, plays games with her, and gets her ready for school; (4) drives to the gym to perform leg exercises; and (5) vacuums, mows the yard, prepares simple meals, and shops in stores. A.R. 22-23. With the exception of the babysitting, however, the ALJ did not find that Plaintiff spent a substantial part of his day engaged in these activities. *See* A.R. 22-23. Moreover, she did not explain how they are inconsistent with Plaintiff's claimed limitations, but simply concluded that they "support[] the exertional limitations in the residual functional capacity" and "suggest[] that he can perform work within the above residual functional capacity." A.R. 22-23.

What is more, the same daily activities on which the ALJ relied actually reveal significant limitations that are consistent with Plaintiff's symptom testimony. *See* A.R. 37 (doctors recommended low-impact exercise, walking, and swimming to treat his pain); A.R. 38 (walking any distance at all causes Plaintiff's back to hurt); A.R. 38 (Plaintiff can drive, but "not long distances without stopping"); A.R. 38 (Plaintiff mows the lawn only once every 10.5 days); A.R. 42 (Plaintiff goes to the gym as a substitute for the physical therapy he cannot afford; he mostly stretches, but also does light-weight exercises to strengthen his legs and back); A.R. 43 (Plaintiff has tried the treadmill for a few minutes, but it aggravates his pain for about a week); A.R. 46 (Plaintiff can lift 25 to 30 pounds, so long as he does not need to pick it up off the ground); A.R. 46 (Plaintiff cannot carry 25 to 30 pounds, but he might be able to carry 15 pounds comfortably if he is careful); A.R. 47 (testimony suggests that Plaintiff's babysitting consists of playing computer games on his granddaughter's iPad, feeding her, and getting her ready for school). The Court accordingly finds that this is not a convincing reason to discredit Plaintiff's symptom testimony.

### 4. **Whether Error was Harmless.**

Even if the ALJ commits error, that error is harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error."

*Molina*, 674 F.3d at 1115; *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Here, the ALJ presented three reasons to discredit Plaintiff's symptom testimony. Two of those reasons were not convincing. But the ALJ's detailed review of substantial medical evidence was sufficiently specific, clear, and convincing to provide an independent basis for discrediting Plaintiff's symptom testimony. The Court accordingly finds that any error in the ALJ's reliance on Plaintiff's daily activities and non-compliance with medical advice is harmless.

## B. Review of Record Evidence.

Plaintiff argues that the ALJ erred in her treatment of two radiology studies. Doc. 10 at 14. First, the ALJ did not mention a November 2013 electromyography ("EMG") study, which revealed "[c]hronic left L5 radiculopathy with evidence of ongoing denervation." *Id.*; A.R. 385. Second, the ALJ acknowledged that a January 2014 magnetic resonance imaging ("MRI") study showed a "left L4-5 paracentral-neural foraminal disc extrusion" (A.R. 20), but neglected to elaborate that this extrusion "contacts and displaces the left S1 nerve root sleeve" (A.R. 512). Doc. 10 at 14. The Court finds no reversible error.

The ALJ must make detailed findings in her opinion, but she need not address evidence that is neither significant nor probative. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam); *see Robinson v. Berryhill*, 690 F. App'x 520 (9th Cir. 2017). It is impractical for an ALJ to address every finding and every statement in the record. An ALJ must simply consider the record as a whole and avoid selectively focusing on only that evidence which supports the ALJ's decision. *See Garrison*, 759 F.3d at 1017 & n.23.

Plaintiff contends that these omissions are significant because they highlight the severity of his condition after his November 2012 surgery, which is something neither the ALJ nor the state-agency physicians considered. Doc. 10 at 14-15. But this is inaccurate. The ALJ and state-agency physicians did consider his condition after the surgery. The ALJ opinion summarizes the post-surgery medical evidence at length, including the

January 2014 MRI study. A.R. 21-22. Dr. Levinson, the state-agency examining physician, examined Plaintiff approximately eight to nine months after his surgery. A.R. 310-317. And Plaintiff concedes that at least one state-agency non-examining physician relied, at least in part, on Dr. Levinson's findings. Doc. 10 at 16; *see also* A.R. 59, 73 (both non-examining physicians received Dr. Levinson's report). Plaintiff's theory of significance is therefore unpersuasive.

Plaintiff likewise does not demonstrate the probative value of the omitted studies. Plaintiff simply declares that the omission of the November 2013 EMG is "material" because it supports the severity of his post-surgical condition. Doc. 10 at 14. Absent a more clear explanation, the Court cannot find this study probative, especially where the ALJ noted another EMG study with a similar result. A.R. 20. Plaintiff contends that Dr. Gause relied on the January 2014 MRI study to conclude that Plaintiff has a "great deal of low back pain" with intense burning and pain in the left foot. Doc. 10 at 14. This misreads Dr. Gause's records. Dr. Gause noted that the MRI revealed a protrusion that impinges on the S1 nerve-root sleeve (A.R. 485), but only opined that this study correlates with "what appears to be an S1 distribution in the left lower extremity" (A.R. 486). Plaintiff instead styles Dr. Gause's notes – on a previous page – regarding his patient's subjective complaints of pain as a medical opinion. A.R. 484. Because Dr. Gause did not make a clear medical finding regarding the severity of Plaintiff's pain, the Court cannot find that this study is probative.

What is more, the ALJ's recitation of medical evidence was extensive. A.R. 19-22. And Plaintiff does not argue – beyond reciting a general rule statement – that the omissions were part of a pattern of cherry-picking evidence that supported her conclusion. *See* Doc. 10 at 17-19. For these reasons, the Court finds no reversible error on this issue.

## C. Discrediting Treating Physician Opinions

Plaintiff argues that the ALJ improperly discredited the medical opinions of two treating physicians: Jonathan Landsman, M.D., and Paul Gause, M.D. *Id.* at 19-21. The Court finds no reversible error.

### 1. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2. Dr. Landsman.

Dr. Landsman has been Plaintiff's treating physician since at least May 2012. A.R. 399. Plaintiff claims the ALJ erred in discrediting two of his opinions. Doc. 10 at 19.

#### a. The First Opinion.

In September 2012, Dr. Landsman completed a disability-claim form on which he indicated that Plaintiff could (1) only occasionally sit, stand, or walk; and (2) never push, pull, bend, twist, climb, lift any weight, or carry any weight. A.R. 263-64. The ALJ assigned "little weight" to this opinion, finding that it was inconsistent with the record as a whole. A.R. 23. The ALJ found that this medical opinion was inconsistent with (1) Plaintiff's hearing testimony that he could lift approximately 20 to 25 pounds, and (2) Plaintiff's consultative examination in which he "could bend at his waist and nearly touch his toes without pain." A.R. 23. Because Dr. Landsman's opinion is inconsistent with those of the state-agency physicians (A.R. 57-68, 70-80, 310-17), the Court must determine whether the ALJ's reasons for rejecting it are specific and legitimate and supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

The ALJ clearly articulated her reasons for discrediting this opinion. A.R. 23. Plaintiff challenges neither the sufficiency of the reasons nor the incompatibility of Dr. Landsman's opinion with Plaintiff's ability to lift and bend. Plaintiff simply declares that

the ALJ erred and recites the relevant legal standard. Doc. 10 at 19-21. Absent any specific challenge to the ALJ's reasoning or the evidentiary support it has in the record, the Court finds that the ALJ properly discredited this opinion.

### b. The Second Opinion.

In August 2012, Dr. Landsman opined in a treatment note that Plaintiff "is unable to work at this point secondary to the severe pain that he has." A.R. 396 (the ALJ incorrectly dates this opinion as October 2012). The ALJ assigned "little weight" to this opinion because it (1) addressed a legal issue reserved for the Commissioner, (2) failed to provide specific work limitations, (3) unduly relied on Plaintiff's subjective reports of symptoms and limitations, (4) was inconsistent with Dr. Gause's treatment notes, and (5) was inconsistent with Plaintiff's daily activities. A.R. 23. Because Dr. Landsman's opinion is inconsistent with opinions of the state-agency physicians (A.R. 57-68, 70-80, 310-17), the Court must determine whether the ALJ's reasons for rejecting it are specific and legitimate and supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

The ALJ clearly articulated her reasons for discrediting this opinion. Plaintiff only challenges the ALJ's reliance on his daily activities, arguing that her rationale relies on the assumption that isolated daily activities could translate to an ability to compete in a grueling professional environment. Doc. 10 at 21. For the reasons discussed above, this reason alone would be insufficient to discredit Dr. Landsman's opinion. But given the four unchallenged reasons, the Court finds that the ALJ properly discredited this opinion with specific and legitimate reasons supported by substantial evidence.

### 3. Dr. Gause.

Dr. Gause has been Plaintiff's treating physician since at least October 2012 (A.R. 297), and Plaintiff claims the ALJ erred in discrediting two of his opinions. Doc. 10 at 19. In March 2013, Dr. Gause completed a disability form on which he listed Plaintiff's physical restrictions: (1) no lifting, carrying, pushing, or pulling weight greater than five pounds; (2) no sitting, standing, or walking more than 30 minutes without a positional change; (3) no bending, twisting, or stooping more than two times per hour;

and (4) no climbing or crawling. A.R. 305. Dr. Gause indicated that these restrictions would last from March 26, 2013, until June, 11, 2013. A.R. 305. In June 2013, Dr. Gause updated Plaintiff's physical restrictions: (1) no lifting, carrying, pushing, or pulling weight greater than 10 pounds; (2) no sitting, standing, or walking for more than 30 minutes without a positional change; (3) no bending, twisting, or stooping more than five times per hour; and (4) no climbing or crawling. A.R. 308. Dr. Gause indicated that these restrictions would last from May 21, 2013, until July 30, 2013. A.R. 308.

The ALJ assigned "little weight" to these opinions, finding that they were inconsistent with the record as a whole. A.R. 24. The ALJ noted that the opinions were inconsistent with (1) Plaintiff's hearing testimony that he can lift 20 to 25 pounds and carry 15 pounds; (2) Plaintiff's consultative examination in which he could bend at the waist and nearly touch his toes without pain, and had a normal gait without using an assistive device for ambulation; and (3) Plaintiff's daily activities. A.R. 24. Because Dr. Gause's opinion is inconsistent with opinions of the state-agency physicians (A.R. 57-68, 70-80, 310-17), the Court must determine whether the ALJ's reasons for rejecting it are specific and legitimate and supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

Plaintiff does not challenge the incompatibility of Dr. Gause's opinions with Plaintiff's ability to lift 20 to 25 pounds and bend at the waist. Plaintiff challenges only the ALJ's reliance on his daily activities, arguing that her rationale relies on the assumption that isolated daily activities could translate to an ability to sustain such activity in a more grueling professional environment. Doc. 10 at 21. For the reasons discussed above, this reason alone would be insufficient to discredit Dr. Gause's opinion. But given the two unchallenged reasons, the Court finds that the ALJ properly discredited Dr. Gause's opinion with specific and legitimate reasons supported by substantial evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk is directed to **terminate** this action.

Dated this 2nd day of October, 2017.

*David G. Campbell*
United States District Judge